FILED

03/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0254

DA 21-0254

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 55N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

ANDREW ORLANDO BIGLEGGINS,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC-20-177
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

          James A. Lapotka, Lake County Attorney, Molly Owen, Deputy County
Attorney, Polson, Montana

Submitted on Briefs:  February 22, 2023

Decided: March 28, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Andrew Bigleggins appeals his jury conviction for strangulation in the Twentieth Judicial District. Lake County prosecutors charged Bigleggins with two counts of strangulation for incidents occurring in January 2020 and April 2020 involving Bigleggins's then-girlfriend R.C. The case went to trial in March 2021. The jury convicted Bigleggins of the January count and acquitted him of the April count. Bigleggins challenges the District Court's denials of his motions for mistrial based on statements by a prospective juror, a testifying police officer, and the prosecutor. We affirm.

¶3 We review a trial court's denial of a motion for mistrial for abuse of discretion. *State v. Criswell*, 2013 MT 177, ¶ 42, 370 Mont. 511, 305 P.3d 760. A court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Criswell*, ¶ 42. A court's decision to grant or deny a motion for mistrial "must be based on whether the defendant has been denied a fair and impartial trial." *State v. Denny*, 2021 MT 104, ¶ 16, 404 Mont. 116, 485 P.3d 1227. If an error or defect does not "affect the substantial rights of the

2

defendant and the record is sufficient to establish the defendant's guilt," a mistrial appropriately is denied. *Denny*, ¶ 16. We afford the trial court deference in deciding a motion for mistrial because it is in the best position to observe the jury and determine the effect of questionable comments made. *Criswell*, ¶ 48.

**Prospective Juror's Statement**

¶4 At the beginning of voir dire, prospective juror Dolores Joseph announced without prompting that she knew Bigleggins and had custody of his daughter. The court excused Joseph for cause without objection. As she was leaving the courtroom, Joseph offered, "The baby is doing really good. She's talking. She's walking."

¶5 After Joseph left, the court asked another prospective juror, Francis Auld, whether he suspected Bigleggins was guilty because he had been accused of a crime. Auld responded, "I think he's guilty but from the little statement I heard between the lady down here (indicating) and him." The court clarified that Auld was referring to Joseph's comment and said, "All right. So the next question is -- you think he's guilty of something having to do with the child. Like as a parent?" Auld responded, "With the child, yes. I don't know what the criminal component is." The court asked if Auld thought Bigleggins was necessarily guilty of a crime because he was sitting in court. Auld responded, "Something is up here because he got caught."

¶6 Bigleggins moved for a mistrial based on Joseph's comment and Auld's reaction to her comment. Before ruling, the court conducted individual questioning in chambers to

3

see how the comment had affected the venire. The court did not question prospective jurors who had not heard Joseph's comment. During the individual voir dire, the court variously clarified that the case was not about custody or a child and admonished each prospective juror to decide the case based only on the evidence in court. Each prospective juror who heard the comment, including Auld, affirmed that they could be fair and impartial and decide the case based on the evidence alone. After concluding the questioning, the court refused Bigleggins's motion for mistrial and offered Bigleggins a curative instruction, which Bigleggins declined.

¶7 Upon examination of the record, we conclude that Joseph's comment that she had custody of Bigleggins's daughter did not poison the venire with bias. The unsolicited comment was improper, but the court's ensuing individual voir dire confirmed that each prospective juror who heard it was able to disregard it and decide the case fairly based solely on the evidence. *See State v. Wright*, 2002 MT 275, ¶ 14, 312 Mont. 352, 59 P.3d 432 (holding that a prospective juror's comment that he had been called before for a similar case involving the defendant was improper but not so prejudicial as to warrant a mistrial). This case is unlike those in which multiple egregious comments during voir dire poisoned the jury pool. *See, e.g.*, *State v. McMahon*, 271 Mont. 75, 81, 894 P.2d 313, 317 (1995) (involving comments from several prospective jurors about a defendant's violent propensities); *State v. Hardaway*, 1998 MT 224, ¶ 30, 290 Mont. 516, 966 P.2d 125 (involving comments from several prospective jurors about a defendant's previous charges

4

and the trial court's failure to instruct the jury that the defendant had been acquitted of such charges).  Here, Joseph's comment was isolated, did not necessarily indicate previous criminal history, and had an attenuated connection—if any—to the defendant's character.  Further, to assure a fair trial, the court confirmed the impartiality of the remaining prospective jurors with individual questioning outside the presence of the others, including extensive questioning of the prospective juror who expressed initial hesitation.  The District Court accordingly did not abuse its discretion in denying Bigleggins's motion for mistrial based on Joseph's comment.

**Police Officer's Testimony**

¶8     Before R.C. testified, the court ruled that she could not mention that Bigleggins was on probation at the time of the alleged crimes—which was her reason for having changed her story to police.  R.C. testified without mentioning probation.  Afterwards, the investigating officer in the case, Officer Kyle Cooper, testified that "[R.C.] did mention that she wanted to protect [Bigleggins].  She essentially told me, when I got the statements from her, that he was currently on probation."  The prosecutor immediately responded, "Stop," Officer Cooper apologized, and Bigleggins's counsel objected.  At a recess, the court denied Bigleggins's motion for mistrial, reasoning that Officer Cooper had not gotten the entire word "probation" out, that the prosecutor had not elicited the word, and that the isolated comment was "not significant enough to deny the defendant a fair trial."  Upon request by Bigleggins's counsel, the court reporter read back that she had transcribed the

5

whole word "probation." The court nevertheless maintained its ruling that the comment was not significant enough to deprive Bigleggins of a fair trial and that the remedy would be a cautionary instruction. Bigleggins declined the instruction.

¶9 Statements regarding proof of a defendant's other crimes generally are barred because of their prejudicial effect. *State v. Derbyshire*, 2009 MT 27, ¶ 22, 349 Mont. 114, 201 P.3d 811. Accordingly, the court prohibited mention of Bigleggins's probationary status, and the prosecutor advised R.C. and Officer Cooper not to mention it. Though it appears to have been a simple mistake, Cooper's statement that Bigleggins was on probation was improper.

¶10 We agree with the District Court, however, that Cooper's statement did not deprive Bigleggins of a fair trial. The statement was unsolicited and brief. *Compare State v. Long*, 2005 MT 130, ¶ 27, 327 Mont. 238, 113 P.3d 290 (holding that any prejudicial effect from a single unsolicited statement about prior offenses was cured by the court's cautionary instruction), *with Derbyshire*, ¶ 53 (holding that 44 mentions that the defendant was on probation was prejudicial and may have contributed to the defendant's conviction). Any prejudicial effect of Cooper's singular statement was minimized by the rest of the State's evidence—including R.C.'s detailed testimony, her 9-1-1 call, evidence of R.C.'s injuries, and Bigleggins's recorded jail calls attempting to persuade his new girlfriend to get R.C. to drop the charges. Bigleggins has not demonstrated "a reasonable possibility" that Cooper's comment contributed to the jury's decision to convict—especially for one charge

of strangulation but not the other. *See State v. Bollman*, 2012 MT 49, ¶ 34, 364 Mont. 265, 272 P.3d 650 (holding that there was no reasonable possibility that a police officer's single unsolicited reference to the defendant's "felony DUIs" contributed to the defendant's conviction); *State v. Scarborough*, 2000 MT 301, ¶ 83, 302 Mont. 350, 14 P.3d 1202 (holding that where there was overwhelming evidence of defendant's guilt, two brief mentions that he was on probation could have had little prejudicial effect). The District Court accordingly did not abuse its discretion in denying Bigleggins's motion for mistrial based on Cooper's statement.

**Prosecutor's Statement**

¶11 During the prosecutor's closing argument, she recounted the calls Bigleggins had made to his new girlfriend from jail. The prosecutor argued:

> Also we presented evidence of some phone calls that the defendant made while he was in jail. And those show a consciousness of guilt. If the defendant -- if the defendant didn't do anything wrong, if none of this actually happened, then why is he encouraging his new girlfriend to ask people to tell [R.C.] to drop the charges, to get it so the State isn't prosecuting this case. **If he wanted to come in and tell the truth, he could have.** He would [not] have said, you know, "Hey Simone, get [R.C.] to drop these charges."[1]

(Emphasis added.) At this point, Bigleggins objected, arguing that the prosecutor had commented on his failure to testify. The court stated, "She is moving on," and the prosecutor proceeded to replay the calls for the jury. After the jury left to deliberate, the

---

[1] The State represents that the final sentence of this quote likely contains a transcription error, omitting the word "not." Bigleggins does not take issue with this representation in his reply.

court clarified to Bigleggins that it had overruled his objection because the prosecutor was not talking about Bigleggins's refusal to testify at trial but about the jail call and what Bigleggins had not said in the call.

¶12 Criminal defendants have a constitutional right not to testify at trial, and prosecutors are prohibited from commenting on such silence. *Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233 (1965) (citing U.S. Const. amends. V and XIV); *State v. Miller*, 2022 MT 92, ¶ 29, 408 Mont. 316, 510 P.3d 17; Mont. Const. art. II, § 25 ("No person shall be compelled to testify against himself in a criminal proceeding.").

¶13 When read alone, the prosecutor's comment that if Bigleggins "wanted to come in and tell the truth, he could have" runs afoul of this prohibition. But statements about a defendant's failure to contradict evidence presented by the State are not improper if they do not, "under the totality of the circumstances, necessarily pertain or refer specifically to the defendant's failure to testify . . . ." *Miller*, ¶ 29. The District Court concluded that the prosecutor's comment was couched in a discussion of the jail calls, referred to what Bigleggins failed to say in those calls, and did not refer to Bigleggins's decision not to testify at trial. As the trial court was present to hear and evaluate the closing arguments in their full context, it reasonably drew this conclusion. *See Criswell*, ¶ 48. But even considering the statement as a comment on Bigleggins's silence at trial, Bigleggins must demonstrate that the prohibited remark rendered his trial unfair "under the totality of the circumstances," including "consideration of any improper prosecutorial comment in the

8

context of the . . . closing arguments as a whole." *Miller*, ¶ 36. We have held that "isolated instances of improper prosecutorial comments during closing argument are generally insufficient to prejudice an accused's right to a fair trial." *Miller*, ¶ 37. Considering the trial record as a whole, Bigleggins has not demonstrated that the prosecutor's isolated comment undermined the fundamental fairness of his trial. We conclude that the District Court did not abuse its discretion in denying Bigleggins's motion for mistrial based on the prosecutor's statement.

**Cumulative Error**

¶14 Because we concluded that each of the above three statements was not prejudicial, we decline to consider Bigleggins's claim to cumulative error. *See State v. Novak*, 2005 MT 294, ¶ 36, 329 Mont. 309, 124 P.3d 182.

¶15 We decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. Bigleggins's conviction is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR